All right, first case we'll hear is United States v. Bello Murillo and Mr. Kiyonaga we'll hear from you. Good morning, Your Honor. It's John Kiyonaga for Mr. Bello. Your Honor, the facts of this case are not in dispute. Mr. Bello was a cab driver in Bogota, Colombia, in league with other corrupt cab drivers. He indulged a scheme to rob unsuspecting fares, strong-arm robbery using tasers, knives, and the like. Special Agent Terry Watson of the DEA was selected as a victim in the words of the trial court, based on his perceived wealth, quote unquote. Unfortunately and very sadly, Agent Watson was a trained soldier and a DEA agent. He resisted the robbery whereupon Mr. Bello stabbed him to death. The statutes under which Mr. Bello has been convicted have never been applied to a street crime, i.e. a crime where it was committed without a specific awareness of the IPP status of the victim. Except for just on that issue, maybe it's your whole issue, but I'm just trying to wonder why that's different from if I'm assaulted on the street as a street citizen and it later turns out, unbeknownst to the assaulter, that I was a federal judge, that violates federal crime anyway doesn't it? Or if some guys rob a bank and it turns out the bank's insured by the federal government, it's a federal crime, they didn't know it was insured. The question is, you take your victim as he is and the crime is really the murder and the assault in this case, kidnapping and the murder. And it seems to me, if you kidnapped and murdered a federal agent in the United States and he didn't know it, he still committed a federal crime, doesn't he? Your Honor, with respect, the answer to your question is both yes and no. In the United States, the answer would be yes and the government has propounded the FIOLA case to that effect. FIOLA is not an examination of due process. It's essentially an examination of sufficiency of the evidence and it announces a rule of statutory interpretation. This is fundamentally a due process. That's the only appeal. That's the only appeal. I thought it was it. That is it. That's it. You're claiming this is it. These are the facts? Fundamentally, it can't be prosecuted here under the due process law. Correct, Your Honor. Fundamentally, it was a poor choice of words. This is a due process appeal and there is a large body of law to the effect that in order- An internationally protected person. Right? The victim was. He was an accredited- And the government, in the indictment, says that's a special circumstance and we're entitled to prosecute that fellow right here. And he didn't have to know when he stabbed him down there in Bogota that he was an internationally protected person. He was a diplomat as well as a DEA agent. That's correct. He had diplomatic credentials in the country of Colombia, but that's the very point of this appeal, Your Honor. There's a very substantial body of law spanning a number of circuits that in order to impose extraterritorial criminal jurisdiction overseas for overseas conduct, there has to be a satisfaction of due process. Barring- What's a due process? That's such a general term. What is your argument? That he didn't have notice? Correct. Of what? Of the fact that his conduct could implicate U.S. interests. There simply is not a single case in any circuit that holds an individual who acts overseas oblivious to any- So he can go and not knowing the Secretary of State is the Secretary of State of the United States, he can go shoot the Secretary of State down there and we don't have an interest to prosecute that. That's your argument? Having an interest and having the right are two different things. And he's- I'm asking my hypothetical. Would the United States have, under this statute, be able to prosecute for shooting the Secretary of State? If the shooter were not aware- He was not aware. I'm a hypothetical. Then the answer is clearly and unambiguously no. The United States would not. There's a legal system in place that has the responsibility and the interest- He knows it's wrong. It's wrong under Colombian law. And not only that, Colombia signed a treaty that would expedite this type of violation. And so the only question in this case, he knows it's wrong. He knows he's committing a crime. He just doesn't know that the person who he is committing the crime against happens to be an assistant attache. And that person- So we, because that's an American interest, we prosecuted it and they extradited. Now, I don't understand what the due process problem is. It's a lot- You're saying it has to be the lack of notice that this was an American attache. And that's the limit of your argument, because he'd had notice of every other aspect that it committed a crime. He doesn't have a due process right to be in a particular court. Your Honor, he has- He has to be prosecuted somewhere. That is not the issue. That is a red herring, sir. That is a- Well, that's the government. That's where you join issue with the government, I think, is they say, plenty of notice, he did this kind of thing, he's going to get prosecuted somewhere. No civilized country accountants is killing people in cabs when they're supposed to be hauling to the airport or wherever it was. Your Honor, there's no question- He knew he was going to be prosecuted somewhere. Your Honor- They say this Brehm case we had kind of supports their proposition. Your Honor, the Brehm case actually supports mine, and I'll explain why. You're a good lawyer. It's painfully simple as to how it supports mine. Of course, you know you're speaking to the author. And it's a fine decision, sir, and I'm going to point out the specifics of your decision in just one second. The trial court rightfully looked to Brehm. Let's start with the fact that the facts of Brehm were wildly divergent from these. Can we start with the fact that Brehm tells us that due process is not offended by the extraterritorial application of United States law under two conditions. American interests are significantly affected, and the circumstances are such that it was reasonable for the defendant to expect to be prosecuted somewhere. Which of those elements that we set out in Brehm, are you arguing, are not met here? The second, being the fairness, is not met here. The last- It was not reasonable for him to expect that he would be prosecuted somewhere? That is not in my- I'm reading to you from the opinion. Well, ma'am, I would read back to you the very last line. Okay, if you could just answer my question about which of those factors do you believe? It was not reasonable for the defendant to expect to be prosecuted somewhere? It was, of course, reasonable for the defendant to expect to be prosecuted somewhere. He committed cold-blooded murder. Did that murder affect significant American interests? Certainly. The point is, ma'am, that it was not fair to subject him to American jurisdiction. The last line of the Brehm case is the notice that the employment contract of Mr. Brehm, which specifically stated he would be subject to the criminal laws of the United States as a person accompanying U.S. troops overseas, served as notice such as to dispel any surprise at being hailed into a U.S. court. That was the last line of the Brehm decision before the operative line saying that the below decision was affirmed. What do you see as the point of the treaty that both countries are signatories to? Are you referring to the bilateral extradition treaty? Yes. Your Honor, that has- And the United States- and the United Nations Convention on the Prevention and Punishment of Crimes Against- that designates internationally protected persons. Well, clearly, the point of the U.N. Convention is to protect internationally protected persons. The U.N. Convention says it shall not be permitted to intentionally murder an IPP. Murder presupposes an intent to kill. So clearly, intentional first refers to the targeting of the IPP. You had to know that he was an IPP. If that were not the point of the convention, it would have said intentionally to kill an IPP. That's the same argument that everybody made with respect to killing a federal agent in the United States or robbing a federal bank. It all says intentionally rob a bank that's insured by the federal government. We've held routinely that the fact- if the conduct is wrong in itself, the fact that it happened to be a federal bank or a federal person that was being assaulted is not something that the perpetrator had to know. Your Honor, I'm not familiar, perhaps, with the entire body of law that addresses that. FIOLA is a case that talks about a statutory interpretation. This appeal is a matter of a due process protection. It trumps statutory interpretation. I know, but your due process argument is a lack of notice that he is a U.S. attache, and that's the only lack of notice because he knows he's going to be prosecuted for the crime. He knows he's going to be in some court. He knows he's imputed with knowledge it's an international violation to take- if he happened to kill somebody who has an international interest. He's not imputed with that knowledge. How is he imputed with that? I don't mean to ask questions, but he's not. Columbia is the signatory to the United Nations Treaty that says that. Your Honor, the language of the convention states that he has to intentionally kill an IPP. That knowledge is not imputed. He has to intentionally murder. If it said intentionally kill, then he would be- it would be strict liability, but the matter is- Depends on the fact that you read the United Nations Treaty different from the way we read similar statutes in the United States. You're saying he has to know that the person is internationally important, and the United Nations Treaty could just as well be construed that he knows he's wrong to kill, and when it turns out to be an internationally important person, it violates international law. Your Honor, the U.S. Supreme Court has said in Flores-Figuereo that a mens rea requirement in a statute is imputed to all the elements of the statute unless the statute makes clear that that's not the case. Intentional applies to the murder and to the IPP in the United Nations Convention, but the take-home point, Your Honors, is that not a single court anywhere in any circuit has ever found the imposition of overseas criminal jurisdiction to be fair in a case where there was not either actual notice, such as Mr. Brehm had because he had a contract, or Mr. Ayesh had because he had a handbook as a local hire of the U.S. Embassy. Brehm didn't even attack an internationally protected person. Your Honor, he could have attacked a goat. It doesn't matter. He had- he attacked a Briton who was another contractor on the base. He had notice because his employment contract with DynCorp said you shall be subject to U.S. laws, but there is not a case anywhere that holds it to be fair. Arbitrary is fine. It's clearly a U.S. interest when a U.S. diplomat gets killed, but the fairness requires, if not actual notice, implicit notice due to conduct that reasonably- In what sense is it unfair? In what sense is it unfair the forum in which he is subject to punishment for a crime that he indisputably committed? How does fairness attach to the forum? The case law is that he needs to be- have a reasonable awareness that he can be reasonably foreseeable as impacting the United States. And the fact that he murdered an American citizen is not enough. Who was speaking English to him when he was killed. He did not speak English, Your Honor. He said no. No in Spanish is exactly the same as it is in English. I was raised speaking Spanish. Spelled the same way, said the same way. There may be a difference of an accent. Consider where this ruling- where this ruling will take us if it's allowed to stand. Arbitrary is any U.S. interest. Fair means he can be prosecuted anywhere. It was inherently criminal. This would be the first instance of such a finding. Stealing is inherently criminal. We're talking about a statute limited to the protection of internationally protected persons. And the question- your argument is that he has to acknowledge it's internationally protected. Now that's the- to me that's the rub of the whole case. And we have a lot of American law which addresses that issue. But to kill an internationally protected person seems to me it's fair to be- as a matter of fact, you know, if you really want to get down to it, I'll bet he's being treated much better in the United States courts and in the United States jails than he would be in Columbia courts and Columbia jails. I don't know, sir. I think it's the province of the Columbia courts. It's the province of the Columbia courts to adjudicate him. But just- But the Columbia courts extradited him. This is his argument. Your honor, they extradited him under- they extradited him under the convention. The court premised the notice on the bilateral treaty which no longer exists. It was disavowed in 1986 and the court's mistake was a direct result of a misrepresentation by the government. Does the designation of an internationally protected person become anything other than ephemeral if the person who is murdering him has to know he or she is an intellectually- internationally protected person? Your honor, this is a terrorism convention and it's a terrorism statute. Terrorism is a deliberate crime for a political end. You have to select the person because of his or her official status. Consider where this is going to go. Stealing is inherently criminal. Say some laborer in Jakarta steals from a nondescript warehouse a bunch of concrete and rebar. Unbeknownst to him, it was owned by the U.S. Embassy. They were going to build a parking lot. You're forgetting the fact that it requires the harm against an internationally protected person. That's this statute, your honor, but the same requirement- That's what we're talking about. The same requirement of due process applies to any statute. But we're only talking about- we're only talking about internationally protected people. If you want to create a parade of horribles, think about where your argument goes, where your analysis takes us. It means that someone in Columbia could murder the Secretary of State unknowingly and that would not affect an American interest? It would certainly affect an American interest. But if the shooter had no idea it was the Secretary of State, it's a Colombian matter, not an American matter. I don't think the American government would put up with that. Well, that's- this is not the American government. This is the court. It's our sovereignty. And you're arguing that under our sovereignty, which is governed by due process, we can't do it. And the answer is we're being- you're applying American law, American constitutional law, and I suggest to you that we can go and protect our interests around the world when they're sufficiently strong. Your honor, I would submit that when that protection violates the notice of crime and due process, you manifestly cannot. Well, you're right. And this would be- We're governed by due process, so I take you to the due process issue and your argument really comes down to the very narrow issue that he has to know he's killing an American attache. And if he didn't know that, he can't be hailed into an American court. That's your argument. Every case cited by either side here involved conduct that was reasonably foreseeable as affecting an American interest. Isn't that your argument? That is my argument, sir. That is your question? But look at the examples. Plotting to shoot down American airliners. Plotting to shoot- to kill American soldiers. You just leave out the big element that makes us indignant when you kill the Secretary of State. If the Secretary of State is murdered anywhere in the world, I can tell you the FBI is going to hunt the person down and bring him to the United States and prosecute him. Your honor, this case should not turn on indignation. It turns on the Constitution. Your honor, that's why that's what happened here. This is a terrible case. This is a fine young man who was killed. The perpetrator should have been tried, convicted, and punished in Columbia. Okay. Why don't you- you've got seven minutes on rebuttal and you're back to the red light. We'll bring you back up. All right. Thank you, sir. Did you handle a case in the district court? I did, your honor, but I did not brief this issue in the district court. In other words, that was briefed by counsel for a co-defendant. Right. But you were in it. I was. It was a conditional plea to present- It was, your honor. I can address that if you'd like. No, no. You don't have to address it. I just wanted to get it straight in my mind. Thank you. All right. Mr. Goldman. Good morning, your honors. May it please the court. Ross Goldman for the United States. This court explained in Brehm that the extraterritorial application of a federal criminal statute will satisfy due process if the prosecution is not arbitrary and if it is fair. The district court correctly applied that standard and correctly held that it was satisfied in this case. As to arbitrariness, there is no dispute in this case that Mr. Bellow's crimes affect substantial United States interests. As to fairness, this court, in fact, did hold in Brehm. It explained what fairness requires, and as importantly, it explained what fairness does not require under the due process clause. What fairness requires is that a defendant know by the nature of his conduct that what he has done is criminal and that he would be subject to prosecution somewhere. Brehm rejects the notion advanced by Mr. Bellow that due process requires the further step that a defendant know that he'd be subject to prosecution in the United States. That standard itself is also satisfied in this case. Mr. Bellow's crimes, conspiring to kidnap and then murdering a victim who turned out to be an internationally protected person are, in the words of Al-Qasar, from which this court in Brehm borrowed the fairness standard, are self-evidently criminal acts sufficient to put Mr. Bellow on notice that he would be subject to prosecution. Those crimes are crimes in Mr. Bellow's home country of Colombia. Moreover, this court's fairness discussion in Brehm is perfectly consistent with the Supreme Court's decision in FIOLA. My friend, Mr. Kiyonaga, notes that FIOLA was a statutory interpretation case. That is true. However, at the end of FIOLA, the court explains that its interpretation of the statute in that case was not, quote, unfair. And the reason it was not unfair is because the concept of mens re in a criminal case does not extend so far as to require advanced notice of foreign consequences of obviously criminal conduct. But rather, a defendant in that circumstance takes his victim as he finds him. And so does Mr. Bellow take Special Agent Watson as he found him, an internationally protected person which subjects him to prosecution in the United States consistent with the due process clause. This court need hold no more in order to affirm the judgment of conviction in this case. I just want to respond to a couple of points made by Mr. Kiyonaga. The first is with respect to Brehm and the employment contract. Brehm quoted, in a block quote, the Alcazar fairness standard. And then, as in Alcazar, which involved the sale of weapons to the FARC knowing they would be used to harm United States interests, which the Second Circuit said were self-evidently criminal acts, this court, after block quoting that standard, said that Mr. Brehm should have similarly understood. Again, his crime, stabbing someone and causing serious injury, is a self-evidently criminal act. And then the court said that, quote, that is all the more so, end quote, true in light of the employment contract. That formulation, all the more so true, suggests something that's extra, that is not necessary to satisfy due process. So perhaps the prosecution in Brehm had this added layer of fairness, but it was an unnecessary layer of fairness. The prosecution in Brehm was that he was committing a crime that would subject him to criminal prosecution somewhere. Another, I just want to respond to really one other point, and that's with respect to the IPP Convention and this notion that it requires proof of knowledge as to the victim's status. Mr. Bellow really rests this argument on the notion that in Section 2 of the Convention, where the Convention describes the enumerated crimes that fall within it, the language of intentional commission of, colon, and then it lists five subcategories of enumerated crimes. However clear it may be in the United States that murder, when you say murder, you mean an intent element. This is an international document, and it may not be as clear in all of the foreign jurisdictions around the world that are signatories to this Convention that not only murder, but all the other enumerated crimes carry an intent element. And we see nothing in the Convention that suggests that a defendant need know that his victim is an internationally protected person, but rather that the Convention applies when the defendant commits one of these enumerated crimes and when the victim is an internationally protected person. I'm happy to address any other issues for the Court. Otherwise, I'm going to rest on this brief. Mr. Kianak. Thank you. I'm back so soon. You can just continue on. I cut you off a little bit, but you've been through the red light. I'm happy for the interest. Your Honor, this case should not turn on the extent to which the crime creates indignation. As I said before, bad facts speak for bad... Hold on. Don't take that comment, my observation. My observation is an exercise of sovereignty. I mean, we decide that, for instance, we don't want the outflow of money in the United States, or we don't want somebody to come in who has contraband, or disease, or organic material. We don't need due process at the Here, our sovereignty is extended through the internationally protected persons, our ambassadors, our attachés. These are people who, through the exercise of our sovereignty, we want to protect and choose to protect. And the question is, does that violate due process? We always subject ourselves to due process. And that comes down, in this case, to whether there's notice, a notice of the status of the person. Because you don't have any complaint about a statute such as this protecting the American interest. Your observation in this case is that the defendant, in this particular case, didn't know it was an assistant attaché he was killing. That's correct, Your Honor. Your Honor, the language on which the district court premised its finding, that Mr. Bellow should have known he'd be subject to prosecution somewhere, is dictum. It was not necessary to the finding in Brehm. Brehm stood fundamentally for the notice that was constituted by the employment contract that specified that Mr. Brehm would be subject to U.S. law. Every case that has addressed the issue has required either actual or implicit notice. Al-Qasr, to which Brehm looked, did use the prosecution somewhere language, but it followed it two sentences later by specifying that Mr. Al-Qasr was specifically plotting to kill American soldiers. Every case has required at least conduct that is reasonably foreseeable as impacting a United States interest. And the Ninth Circuit in the Vasquez-Velasco case, which is cited by the agents overseas, and said that there would not be jurisdiction if the shooter, if the assassin, had thought that they were random tourists. That is exactly what we have here. So at least one circuit sees the point that Mr. Bellow is trying to make. But consider... That sounds like a lot of dictum too. It's a dictum that the court saw fit to include, Your Honor, so I'm... You don't claim that it was wrong for the government to classify the DEA agents as attachés? No, Your Honor. They had a diplomatic, internationally protected person. That's a tough place to work down there for a DEA agent. Yeah, I'm not contesting that Mr., that Agent Watson, A, was a diplomat, or B, deserved diplomatic credentials. He was credentialed by the government of Columbia. He was a diplomat. He was an IPP. But consider where this case can take us. Help me understand again why you think that FIOLA helps you when the court held, there held that it's criminal to assault a federal officer and doesn't require proof that the defendant knew the victim was a federal officer? Because, Your Honor, FIOLA, first of all, is distinguishable because it talks about domestic conduct. So it doesn't touch... You relied on, you were relying on FIOLA as supporting your proposition. I didn't say actually that it supported the proposition. I'm saying that it's irrelevant to the argument that I'm making. FIOLA is... It goes to the mens rea. The mens rea and FIOLA was the killing of a person and knowledge that that person was a federal officer was not required. And that is the argument that I was suggesting could be applied to the international statute to impute knowledge of that possibility to the defendant in this case. Your Honor, I would say two things to that. First of all, FIOLA is not fundamentally a due process evaluation. Well, it speaks in terms of fairness and says that it is not unfair because the defendant knew from the outset that the planned conduct was wrongful even though he was probably surprised to find out that the victim was a federal officer. So those facts address your argument about fairness. They do, Your Honor, but it's not... Notwithstanding it says fairness, it is not styled nor does it constitute properly viewed a due process inquiry. But it also... You keep redefining the problem. You tell us that it's fairness, but now it's not fairness. It has to be. Your Honor, I meant no disrespect. I called female judges ma'am. I'm sure not. It's just not my preference. So thank you. It's a domestic case. FIOLA was a domestic murder. This is an international murder. I mean, you can try to distinguish, but the point she's making, asking you, Judge Duncan is asking you, is we're talking about a fairness which you're reading into the due process clause. The notion that he has to have notice that the person is an attaché. And here we're addressing a domestic statute that has the same structure. You kill a federal officer and it's a crime and the defendant comes and says, I didn't know he was a federal officer. And it's the same argument that Mr. Warner, Bello Morillo is making in this case. Your Honor, I would simply say to that, that FIOLA should not trump the body of circuit case law that specifically addresses the due process implications of prosecuting overseas conduct. You didn't just use the word due process. That's too broad a term, covers too broad a territory. Your problem is notice that he was a federal agent. In other words, your argument is that FIOLA does not govern a statute which tries to reach into Columbia and say, even though you kill, you have to also know he's a federal agent. Your Honor, let me try to illustrate this with an example. The district court says that you have an application that is not arbitrary if you have a U.S. interest. And it's not unfair if the client was inherently criminal. Consider where that takes us. Stealing is criminal. Somebody steals construction supplies. It develops they belong to the embassy. Are you going to extradite that laborer from the slums of Jakarta, the United States, because he stole American rebar? How about if the embassy- Probably an American crime, steal rebar from an American embassy. It's a federal crime to steal federal property. And probably prosecutable in the United States, probably. We don't need to reach that issue, but that is treated as territory of the United States. I would submit if he had no idea it was the United States- I don't think this advances the argument, but it's not a good hypothetical. Well, I'm simply saying that if you read fairness that broadly to encompass any inherently criminal conduct, we can basically- It focuses the criminal conduct on the status of the individual as an internationally protected person. What is the point of that language if the person who is committing a crime has to know it when that is, I would imagine with respect to most internationally protected people overseas, virtually unknowable. Your Honor, I would submit it's not virtually unknowable, but the fact of the matter is- Well, it was unknown here. It was unknown here. And this is not atypical. This is not, I would imagine, the atypical situation. A DEA agent is unlikely to be known by most cab drivers, federal judges, embassy personnel. What does this reach in your view? Perhaps a better hypothetical would be one in which you think your definition of notice, notice as you understand it, does apply. Your Honor, if you look at the cases where they have found notice, it's attacking a U.S. Army base. It's trying to kill U.S. soldiers. But that's not what we're dealing with. We're talking about the protection of internationally protected people. So give me an example loosely based on these facts where notice would exist. Notice would exist if the person were in a diplomatic car with diplomatic plates and American flag. Well, he wouldn't have attacked by a cab driver. You need to give me an example that loosely approximates these facts. A cab driver picks up someone in a military uniform. Your Honor, I believe you're making my point. I believe you're not answering. I'm trying to. Is that an example? If the victim is wearing a U.S. military uniform, of course. So that would be it. So any others? If you were at an embassy function, they were attacked there. But this is designed. He comes out of an embassy reception? Your Honor, it's a factual question. Exactly. Which is why your hypothetical about rebar wasn't particularly helpful, by extension. What I'm trying to find out is how one, as you conceive of notice, understands that there's notice. Your Honor, it's a question of fact. But if notice exists, if the conduct of the accused is reasonably foreseeable as affecting or harming a U.S. interest. So if the victim is wearing a U.S. Army uniform, that test is met. If he's specifically planning to shoot down Delta airliners, that... You say this fellow needs to be wearing a CEA badge. Your Honor, Mr. Bellow needed some set of knowledge that made it reasonably foreseeable that this was an American government official. All right. We've let you go on a little while here. So thank you very much. Thank you, Your Honor. I noticed you were court appointed. Yes, sir. And I do want to recognize your service on behalf of Mr. Bellow Morello. Thank you, sir. Pleasure. If you were here, you'd say you did a great job. Well, that's kind of you, sir. Thank you. We'll come down and greet counsel and move on to the next case.
judges: Paul V. Niemeyer, Robert B. King, Allyson K. Duncan